UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **DORIS SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-03163-NCC |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the applications of Doris Smith ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in support of the Answer (Doc. 22). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on April 3, 2018 (Tr. 187-99). Plaintiff was initially denied on August 14, 2018, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 118-19, 129-31). After a hearing, by decision dated May 17, 2019, the ALJ found Plaintiff not disabled (Tr. 7-28). On September 30, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021, and that Plaintiff has not engaged in substantial gainful activity since April 15, 2016, the alleged onset date (Tr. 12).[1] The ALJ found Plaintiff has the severe impairments of diabetes mellitus, schizophrenia, anxiety, bipolar disorder, major depressive disorder with psychotic features, schizoaffective disorder, obesity, and cannabis use disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 17). Plaintiff is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently (*Id.*). Plaintiff is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks (*Id.*). She is unable to climb ladders/ropes/scaffolds, but is occasionally able to

---

[1] Plaintiff previously applied for disability benefits and, after a hearing, an ALJ issued a decision in that matter on February 24, 2017 (Tr. 68-83). During the hearing for the current application, Plaintiff's counsel indicated an intent to amend the alleged onset date ("AOD") to the day after the prior decision, however, no such amendment appears on the record nor did the ALJ formally reopen the prior file. However, the ALJ found Plaintiff's alleged onset date to be April 15, 2016, and addressed medical records before the date of the prior decision (Tr. 10, 12, 19). *See* Tr. 23 ("The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2016, through the date of this decision."). Indeed, although Defendant notes the discrepancy, the parties address the entirety of the record and rely on the April 15, 2016 AOD (Doc. 19 at 1; Doc. 22 at 2 n.2). While the denial of a prior application ordinarily forecloses benefits for an earlier time period, the Court finds that the ALJ implicitly reopened Plaintiff's first application by considering the entire record, using an AOD before the date of the prior decision, and reaching a decision on the merits. *Brown v. Sullivan*, 932 F.2d 1243, 1246 (8th Cir.1991) ("[I]f the Secretary reconsiders the merits of an application previously denied, the claim may properly be treated as having been reopened as a matter of administrative discretion."); *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir.1989) ("[A] claim may properly be treated as having been reopened as a matter of administrative discretion where the Secretary reconsiders the merits of the application previously denied.").

climb ramps/stairs, balance, stoop, kneel, crouch, and crawl (*Id.*). Plaintiff should avoid all exposure to unprotected heights and use of dangerous moving machinery (*Id.*). She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes (*Id.*). She is able to perform work that is isolated from the public, with only occasional supervision and only occasional interaction with coworkers (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that claimant can perform including cleaner, hand packer, and production worker (Tr. 22-23). Thus, the ALJ concluded that Plaintiff has not been under a disability from April 15, 2016, through the date of the decision (Tr. 23). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments

3

would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at

4

step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

### IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's evaluation of Plaintiff's subjective complaints is not supported by substantial evidence and that the ALJ improperly reviewed the opinions of Dr. Stone Kraushaar, a consultative psychological examiner, and Dr. Syed Raza, Plaintiff's treating psychiatrist[2] (Doc. 19). For the

---

[2] The parties do not dispute that Dr. Raza is Plaintiff's treating psychiatrist (Doc. 19 at 8; Doc. 22 at 12).

5

following reasons, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Barnhart*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted). The Eighth Circuit Court of Appeals clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (*quoting Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and

6

because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found Plaintiff has the RFC to perform light work with the following limitations (Tr. 17).  Plaintiff is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently (*Id.*).  Plaintiff is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks (*Id.*).  She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl (*Id.*).  Plaintiff should avoid all exposure to unprotected heights and use of dangerous moving machinery (*Id.*).  She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes (*Id.*).  She is able to perform work that is isolated from the public, with only occasional supervision and only occasional interaction with coworkers (*Id.*).

The Court will first consider the ALJ's evaluation of Plaintiff's subjective complaints,[3] as the ALJ's evaluation of Plaintiff's symptoms were essential to the ALJ's determination of other issues, including Plaintiff's RFC.  *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)).  In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3)

---

[3] Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

7

the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms to be "inconsistent because [Plaintiff's] symptoms have improved substantially with medication compliance and therapy. Many of her mental health-related hospitalizations were largely related to non-compliance with medications and life stressors, as opposed to underlying mental health components" (Tr. 18). The ALJ then continued with a detailed overview of Plaintiff's mental health impairments,[4] noting Plaintiff was hospitalized for mental health related conditions on several occasions (Tr. 18-20). Specifically, in March 2016, Plaintiff presented to the emergency room with suicidal thoughts (Tr. 348). Plaintiff was admitted and, during her hospitalization, strict suicide precautions were implemented (*Id.*). Plaintiff participated in all treatment modalities and, with the help of medication management and psychotherapy, Plaintiff was observed to have "drastically improved" (*Id.*). At discharge, 4 days

---

[4] Plaintiff does not raise any argument as it relates to her physical impairments, as such the Court will not address them here.

8

later, Plaintiff presented as fully alert and oriented, in no acute distress, neatly dressed, well-groomed, in a happy mood, and denied hallucinations, delusions, or suicidal ideations (*Id.*).

In June 2016, Plaintiff again presented to the emergency room with suicidal thoughts and was admitted to Barnes Jewish Hospital (Tr. 400, 575).  At the time Plaintiff reported that she saw her psychiatrist "last week" and had active psychotropic prescriptions (Tr. 575).  In December 2016, Plaintiff reported to the emergency room with suicidal ideations with a plan (Tr. 378).  Plaintiff was admitted to the hospital and after attending group therapy and starting psychotropic medications was discharged three days later "feeling better" (Tr. 378).  The ALJ noted that the December 2016 visit appears related to several recent deaths in her family, including that of her mother (Tr. 19, 378).  Later that same month, Plaintiff returned to the hospital reporting an increase in depression and suicidal and homicidal ideations (Tr. 472).  Plaintiff was again hospitalized, and her psychiatric medications were adjusted (*Id.*).

After 2016, as indicated by the ALJ, Plaintiff's mental-health related hospitalizations became "more sporadic" (Tr. 19).  Plaintiff next reported to the hospital in May 2017 with suicidal thoughts and was hospitalized (Tr. 486).  Plaintiff stated that she was not taking her medications (*Id.*).  Subsequent appointments with various treatment providers indicated some normal mental health statuses (Tr. 20).  By way of example, the ALJ noted a March 2018 appointment in which Plaintiff's psychiatrist notes indicated that Plaintiff had normal appearance, average eye contact, and was described as cooperative, with clear and logical speech, normal cognition, average intelligence, normal insight, and normal judgment (Tr. 687-88).  The ALJ thus concluded that Plaintiff's symptoms have improved substantially with medication compliance and therapy (Tr. 18).

The ALJ also relied on her analysis of Plaintiff's activities of daily living, finding that they "lend additional support that she is capable of working within the residual functional capacity, as she has demonstrated the ability to exercise varied levels of mental functioning" (Tr. 20). The ALJ specifically noted that Plaintiff took care of her two grandchildren for "a season," goes shopping with her sister twice a week, goes to church every Sunday, and occasionally cooks and bakes (Tr. 20). The ALJ concluded that Plaintiff's activities of dialing living "lend additional support that she is capable of working within the residual functional capacity, as she has demonstrated the ability to exercise varied levels of mental functioning" (Tr. 20).

The Court finds, however, that while the ALJ's accounting of Plaintiff's history is not inaccurate, the ALJ's evaluation of Plaintiff's subjective complaints is not supported by substantial evidence. Plaintiff was hospitalized 4 times for a total of 22 days from March 2016 to March 2017. During this time, contrary to the ALJ's assertion, there is only one instance in which Plaintiff reported that she had not taken her medications for "a period of time" noted elsewhere as only two to three days (Tr. 486, 295; Doc. 19 at 6). Indeed, notes by multiple health care professions indicate that Plaintiff was compliant with her treatment and medication (*See, e.g.,* Tr. 400, 561, 580, 699, 711). After this period, although Plaintiff's inpatient hospitalizations decreased in frequency, Plaintiff was hospitalized again in May 2017 for four days (Tr. 486) and physicians reported Plaintiff suffered from the following: suicidal ideation (Tr. 751, 881), homicidal ideation (Tr. 632), poor concentration (Tr. 564), decreased appetite (Tr. 564), crying spells (Tr. 564, 632), feelings of guilt (Tr. 564, 629), anxiety (Tr. 651, 748), limited or poor insight and judgment (Tr. 487, 637, 650), lack of motivation (Tr. 632), depressed mood (Tr. 564, 488, 751 637), flat moot (Tr.488), difficulty concentrating (Tr. 750), dissociation (Tr. 751), and auditory hallucinations (Tr. 495, 499, 629, 631-32, 650, 749. 881). Further, to the

extend the ALJ found Plaintiff's hospitalizations related to life stressors, specifically the death of Plaintiff's mother, the Court notes that Plaintiff's self-reports regarding the death of her mother place the passing some time between 2013 and 2018 (Plaintiff's mother passed in April 2016) so while her mother's death was undoubtedly traumatic, it could not properly be termed an immediate stressor to her December 2016 hospitalization (*See* Tr. 602 (2013), 575 (March/April 2016), Tr. 50 (2018), Tr. 53 (April 16, 2016)).

The ALJ appears to also have overly relied on Plaintiff's reports of activities of daily living, specifically her role as a caregiver for her two grandchildren. As noted in the record, however, Plaintiff acted in an emergency capacity to protect the children which occasionally resulted in the three of them living in her car (Tr. 637). Further, Plaintiff reports that she is homeless and finds it hard to dress herself, does not often prepare food because she does not remember how to cook, and does not go anywhere because she gets confused (Tr. 250-257). Indeed, Plaintiff uses a home health aide four hours a day, seven days a week who does the cooking and cleaning for her and helps her to organize her medicine (Tr. 41, 605). *See* Tr. 38 ("[S]he receives home health care because she needs help with doing tasks, but also reminders to do all of her basic care needs."); Tr. 249 ("[Plaintiff] has been our client for approximately two years. We are a vendor for the state of Missouri that provide home health services to disabled individuals that can not live alone without assistance due to their disability or may otherwise have to reside in a nursing home. … During the past two years, we have assessed that [Plaintiff] needs help with her personal care such as bathing, cleaning, laundry and other daily chores. We have had many client visits with her in which we have observed that she is unable to care for herself due to her medical conditions."). *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("This court has repeatedly stated that a person's ability to engage in personal activities such as

11

cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.").

The Court also finds that the ALJ improperly evaluated the opinions of Dr. Stone Kraushaar ("Dr. Kraushaar"), a consultative psychological examiner, and Dr. Syed Raza ("Dr. Raza"), Plaintiff's treating psychiatrist. For claims like Plaintiff's filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). However, the rules make clear that supportability and consistency are the "most important factors," and therefore, an ALJ must explain how she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ

must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

On July 23, 2018, Plaintiff saw Dr. Kraushaar for a psychological consultative examination (Tr. 602-606).  Dr. Kraushaar diagnosed Plaintiff with schizoaffective disorder, bipolar type and cannabis use disorder, mild, abuse (Tr. 605).  Dr. Kraushaar found Plaintiff to have marked impairment in her ability to adapt and manage oneself and moderate impairment in her ability to understand, remember, or apply information and her ability to interact with others (*Id.*).  Dr. Kraushaar specifically noted that Plaintiff uses a home health aide who does the cooking and cleaning for her and helps her to organize her medicine (*Id.*).  Of additional note, Dr. Kraushaar indicated that Plaintiff could not read (Tr. 603).  Dr. Kraushaar concluded that Plaintiff's prognosis is fair to poor (Tr. 605).

On March 1, 2019, Plaintiff's treating psychiatrist, Dr. Raza completed a Medical Source Statement (Tr. 1263-66).  Dr. Raza indicated that he had been seeing Plaintiff as a patient since 2011 for her major depressive disorder with recurrent psychotic features (Tr. 1266).  Dr. Raza found Plaintiff to have marked limitations in almost every category including, of note, her ability to sustain ordinary routine and regular attendance, ability to follow one or two step oral instructions to carry out a task, ability to function independently, ability to work a full day without needing more than the allotted number or length of rest periods, and ability to respond appropriately to requests, criticism, suggestions, correction and challenges (Tr. 1263-64).  Dr. Raza indicated that Plaintiff's overall rate of production performing simple tasks in a low-stress environment would be 31% or more below average (Tr. 1263).  Dr. Raza further indicated that Plaintiff could not perform in a setting any contact with the general public or in proximity to coworkers (Tr. 1264).  Dr. Raza also found that Plaintiff would be late to work or need to leave

13

work early three time a month or more and would miss work twice a month as a result of her psychologically-based symptoms (Tr. 1264). In support for these findings, Dr. Raza identified the following objective signs and symptoms: lack of judgment, elevated moods, very easily irritated, distraction, and low self-esteem (Tr. 1266). Dr. Raza further noted that Plaintiff may have difficulty working at any job on a full time sustained basis because she is withdrawn, has low decision making, mood swings, is hopeless, and has memory problems (Tr. 1266).

The ALJ concluded that these opinions were "not persuasive" (Tr. 21). Specifically, the ALJ found Dr. Kraushaar's opinion to be based upon the subjective reports of Plaintiff and not supported by the examiner's own findings in which he described Plaintiff as well-groomed, participatory, coherent, and with a good memory (*Id.*). The ALJ similarly found Dr. Raza's opinion not supported by the medical records overall and that he failed to cite specific behavior patterns or treatment notes in support of his assessment (*Id.*). As a preliminary matter, the Court finds Dr. Raza's opinion to be sufficiently detailed as Dr. Raza includes the specific indicators of his conclusions. While Dr. Raza may not have cited to treatment notes in support of his assessment, his treatment notes are consistent with his opinion. For example, at a December 2017 appointment, Dr. Raza noted that Plaintiff "continues to experience auditory hallucinations and see shadows occasionally" (Tr. 650). He also noted that Plaintiff was anxious and increased her medication (Tr. 650, 655). Both Dr. Raza's and Dr. Kraushaar's opinion are supported by the entirety of the record, as addressed in more detail above. Further, the ALJ appears to have inappropriately relied on the July 31, 2018 opinion of state agency medical consultant, Marsha Toll, Psy.D. to the exclusion of these other opinions  (Tr. 20-21, 95-96, 99-100). Dr. Toll found Plaintiff "capable of performing simple related work" with some moderate limitations in the areas of sustained concentration and persistence, social interaction, and adaptation (Tr. 99-100).

14

Although the ALJ finds Dr. Toll's opinion only "somewhat persuasive," the ALJ's evaluation of Plaintiff's paragraph B criteria and her RFC analysis largely follows in line with the brief assessment of Dr. Toll given except to the extent as noted by the ALJ regarding Plaintiff's concentration and focus. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (finding the ALJ erred in disregarding the opinions of claimant's treating physicians and instead crediting the opinions of consultative physicians who had not examined claimant).

Accordingly, the Court finds that remand is required because the ALJ's RFC determination is not supported by substantial evidence.

### V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to conduct an appropriate analysis of Plaintiff's subjective complaints as well as the medical opinions of Dr. Stone Kraushaar and Dr. Syed Raza; further develop the medical record; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 29th day of January, 2021.

　　　　　　　　　　　　　　　　　　　　/s/ Noelle C. Collins
　　　　　　　　　　　　　　　　　　　NOELLE C. COLLINS
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE